# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>ORR WATER DITCH CO., *et al*.,<br><br>   Defendants.<br><br>In Re: State Engineer Ruling #5760 | Case No. 3:73-cv-00003-LDG<br>Equity No. A-3-LDG<br>Sub-File 3:73-cv-00021-LDG<br><br>**ORDER** |

Washoe County and the Cities of Sparks and Reno filed Application No. 70934 with the State Engineer, seeking to change the point of diversion, place of use, and beneficial use of certain decreed water rights of Truckee River water purchased by Washoe County, Sparks and Reno. The underlying water is presently diverted at the Derby Dam, through the Truckee Canal, to be applied to land in the Newlands Reclamation project for the beneficial use of irrigation. The application requests that the water be diverted at the Derby Dam into the lower Truckee River, so that it can be put to the beneficial use of recreation and wildlife.

The City of Fallon petitioned for review of State Engineer Ruling #5760 (#1), and has filed an opening and reply brief in support of its petition.[1]

Washoe, Sparks and Reno filed an answering brief, as did the State Engineer.

Fallon argues, through several different theories, that as a matter of law the State Engineer cannot approve a change application that permits the transfer of place of application of water from within to without the Newlands Project. Fallon further argues that the applicants–Washoe County, and the Cities of Sparks and Reno–cannot beneficially use water for recreation and wildlife because such uses are reserved to the State and the federal government.

Having reviewed the arguments and law cited by the parties, the court holds that the State Engineer did not err in approving Application 70934 in Ruling #5760.

The Reclamation Act of 1902 does not prohibit the transfer of water rights from within to without the Newlands Project.

Pursuant to the Reclamation Act, the United States obtained the water rights adjudicated in Claims 3 and 4 of the *Orr Ditch Decree* as part of its efforts to create the Newlands Reclamation Project. The United States then transferred its water rights to the individual land owners within the Newlands project. While Fallon concedes that transfers of the place of application of water within the Newlands project are governed by State law, it asserts that no provision of state or federal law expressly authorizes a transfer to a place of application outside of the Project. Fallon argues that, just as changes to the types of permitted uses of water within the Newlands Project required congressional action,

---

[1] Although Churchill County filed a "joinder" to Fallon's opening brief, it does not appear that Churchill County petitioned for review of the State Engineer's order. The court has reviewed the docket in both this subfile, 3:73-cv-24-LDG, and the main file, 3:73-cv-3-LDG, and has not located a petition by Churchill County seeking review of State Engineer's ruling #5760.

2

congressional action is required to authorize a withdrawal of water from the Newlands Project.

As noted by the respondents, however, Fallon fails to identify any specific provision of the Reclamation Act that actually prohibits an individual beneficial owner of a water right, which right was initially obtained by the United States pursuant to the Reclamation Act, from transferring the place of use to a location outside of the project.  Further, in the Truckee-Carson Pyramid Lake Water Settlement Act (upon which Fallon relies), Congress expressly approved the Secretary of Interior to operate the Newlands Project for "any other purposes recognized as beneficial under the law of the State of Nevada," without any limitation as to the place of use, "in addition to the existing irrigation purpose of the Newlands Reclamation Project."  Thus, the test is whether the change in place and manner of use is appropriate under Nevada state law, not the location of that use.

In its reply, Fallon argues that state water law cannot approve a water transfer that would be contrary to the policies of Congress underlying the Reclamation Act.  While Fallon cites to several decisions that indicate state law cannot be applied contrary to a congressional directive (that is, to a statute signed into law), the City fails to identify any decision that a state water law cannot act contrary to a policy of Congress that is not set forth as statute.  Stated otherwise, the measuring stick is not the policies of Congress, but the statutes of the United States.

Fallon's reliance on *Nevada v. United States,* 463 U.S. 110 (1983), suggesting the approved transfer is "somewhat similar" to the United States' failed attempt to transfer Claim #3 water rights to the Pyramid Lake Paiute Tribe, is misplaced.  The Supreme Court made clear, in *Nevada v. U.S.*, that once the United States transferred its beneficial interest Claim #3 water rights to the individual owners of the land to which the water right was appurtenant, the United States could no longer exercise control over those individual water rights.  In this case, it is the owners of the individual water rights (that is, Washoe, Reno

1  and Sparks) that are exercising control over the water rights they purchased.  Thus,
2  *Nevada v. U.S.* actually supports the conclusion that control over the place of use is
3  controlled by the individual owner of water rights so long as it is consistent with state law.
4  Accordingly, the court holds that the Reclamation Act does not prohibit the State Engineer
5  from approving an application that changes the place of use from a location within the
6  Newlands Reclamation Project to a location outside of that project.

8  <u>The Orr Ditch Decree does not prohibit the transfer of water rights from within to outside of
9  the Newlands Project</u> .
10         Fallon next contends that the approval of the transfer application constitutes a
11 modification of the Orr Ditch Decree without first seeking approval of this Court.  More
12 specifically, Fallon argues that Claim #3 of the Orr Ditch Decree must be treated as a
13 "unitized body of Project water" (and presumably, only as individual water rights only in the
14 context that the water rights are derived from Project water rights).  That is, while the State
15 Engineer's  approval of a change in place of use within the Project does not modify the Orr
16 Ditch Decree, any change of use that alters the "unitized body of Project water" awarded in
17 Claim #3 must be first approved by this Court before the State Engineer may approve the
18 change.
19         As respondents point out, however, the courts have long recognized that the
20 appropriate procedure for transfer applications of water rights adjudicated by the *Orr Ditch*
21 *Decree* is to exhaust the procedure before the State Engineer, and then to petition this
22 court for review of the State Engineer's decision.  The *Orr Ditch Decree* adjudicated water
23 rights both within and outside of the Newlands Project.  The *Decree*, and the subsequent
24 judicial gloss establishing the procedures for change applications that concern adjudicated
25 water rights, do not provide for different procedures depending on whether the water right
26 was obtained by the United States in Claims ## 3 and 4.  In short, the initial procedure to

4

modify the *decreed* place of use of a water right is through a change application filed with the State Engineer.  This court then reviews the State Engineer's decision to ensure that it comports with state law and applicable federal law.  As the respondents filed their change application with the State Engineer, they have followed the appropriate procedure to modify the decreed place of use of that portion of the Claim #3 water right that they own.

<u>Nevada's statutes governing Irrigation Districts do not prohibit the transfer of water rights from within to outside of the Truckee-Carson Irrigation District.</u>

Fallon notes that Chapter 539 of the Nevada Revised Statutes provides for a specific mechanism to "dissolve" an Irrigation District.  Relying on this chapter, Fallon argues that an ongoing series of incremental transfer of water rights from within an Irrigation District to outside of the Irrigation District could eventually result in a <u>de facto</u> dissolution of the Irrigation District.  As such, Fallon concludes that any individual transfer of water rights from within to outside of an irrigation district violates this statutory procedure for dissolving an irrigation district.

Fallon's argument fails, however, because it has not shown that, even if a change application resulted in the transfer of all water rights to a location outside of an irrigation district, the irrigation district would be <u>dissolved</u>.  While such an irrigation district may not have a purpose, and may have no water rights on which to act, Fallon has not established that these facts establish that the irrigation district is dissolved.  Stated otherwise, the statutes upon which Fallon relies are simply irrelevant.

<u>Entities other than the State or federal government are permitted to put water to the beneficial use of recreation and wildlife</u>.

Finally, Fallon argues that only Nevada (and sometimes the federal government) may beneficially use water, in stream, for the beneficial uses of recreation and wildlife.

1  Fallon contends that if entities other than the state or federal government can make such
2  use of water, it will lead to improper speculation in water rights.  In addition, as owners
3  could simply put the water to use in a stream, it would become impossible to challenge the
4  water right for abandonment or forfeiture.[2]

5  Fallon, however, does not identify any statute or case law that prohibits an owner of
6  a water right, other than the state or the federal government, from beneficially using water
7  for recreation or wildlife in stream.  Indeed, the cases and statutes upon which Fallon relies
8  indicate the opposite, as they actually contemplate water right owners (other than the State
9  or federal government) making such a use of water.  Rather, the appropriate control rests
10 in the State Engineer who approves the intended use.  Discretion rests with the State
11 Engineer to decide whether somebody seeking to appropriate water for wildlife use, or to
12 change the use to wildlife, is 'speculating' in the water right or improperly attempting to
13 avoid abandonment.  In the present matter, the State Engineer made that determination,
14 and Fallon did NOT challenge that determination.[3]

15 Accordingly, for good cause shown,

16 THE COURT **ORDERS** that the City of Fallon's Petition for Review (#1) is DENIED.

17 DATED this 27 day of April, 2009.

_____
Lloyd D. George
United States District Judge

---

[2] The court would note that the Nevada statutes governing water law have been revised and no longer permit a challenge to a water right as forfeited.

[3] Fallon challenged only whether the State Engineer COULD make that determination.

6